TARA K. McGRATH
United States Attorney
JOSHUA C. MELLOR (CA 255870)
MIKAELA L. WEBER (CA 279391)
PETER S. HORN (CA 321358, NY 5333653)
Assistant U.S. Attorneys
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: 619-546-9733
Email: joshua.mellor@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    v.<br><br>ALEXANDER DMITRIENKO (6),<br><br>             Defendant. | Case No. 21-CR-1623-JLS-6<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, TARA K. McGRATH, United States Attorney, and Joshua C. Mellor, Mikaela L. Weber, and Peter S. Horn, Assistant United States Attorneys, and Defendant ALEXANDER DMITRIENKO, with the advice and consent of Patrick M. Griffin, counsel for Defendant, as follows:

I

<u>THE PLEA</u>

Defendant agrees to plead guilty to Count 1 of the Superseding Indictment charging Defendant with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).

This plea agreement is part of a "package" disposition as set forth in Sections VII.E and XI.A below.

## II

### VENUE

Defendant hereby agrees and stipulates that venue for the offense charged in Count 1 lies in the Southern District of California under 18 U.S.C. § 3237 because criminal activity of the ANOM RICO ENTERPRISE occurred within the Southern District of California.

## III

### NATURE OF THE OFFENSE

A.    ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

**Count 1 – RICO Conspiracy to Conduct Enterprise Affairs**

1. ANOM was an enterprise.

2. ANOM was engaged in interstate or foreign commerce, or its activities in some way affected (or were contemplated to in some way affect) interstate and foreign commerce.

3. Defendant was employed by or associated with ANOM.

4. There was an agreement between two or more persons to conduct (or participate, directly or indirectly, in the conduct of) ANOM's affairs through a pattern of racketeering activity.

5. Defendant became a member of the conspiracy knowing of its illegal objects and intending to help accomplish them.

//

//

Plea Agreement

2

Def. Initials AO

21-CR-1623-JLS

B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

**Enterprise**

1.   The administrators, influencers, distributors, and agents of the ANOM brand hardened encrypted device were an enterprise (the "ANOM ENTERPRISE"); that is, ANOM was an association and a group of individuals associated-in-fact for at least the purposes of (1) aiding and abetting the importation, exportation, and distribution of illegal drugs throughout the world; and (2) money laundering.

2.   The organizational structure of the ANOM ENTERPRISE included individuals in the following roles, among others:

   a.   Administrators: Individuals who had physical control of the ANOM ENTERPRISE's network and could initiate new subscriptions, set up access for Distributors, remove accounts, and remotely delete (i.e., wipe) and reset devices.

   b.   Influencers: Well-known crime figures who wielded significant power and influence over other criminal associates. These Influencers built a reputation for their knowledge and expertise in the hardened encrypted device field and used that power, knowledge, and expertise to promote, market, and encourage others to use specific hardened encrypted devices.

c. <u>Distributors</u>: Individuals who coordinated groups of agents of the ANOM ENTERPRISE who received payments for ongoing subscription fees, sent associated funds (minus personal profit) back to the parent company, and provided second-level technical support. Distributors would also remotely delete and reset devices. Distributors communicated and coordinated directly with the ANOM ENTERPRISE's Administrators.

d. <u>Agents</u>: Individuals who physically sourced and engaged with new customers to sell and deliver devices with initial and renewal subscriptions. Agents earned a profit on the sale of the handset only and provided first-level technical support to their groups of criminal end-users.

3. Members of the ANOM ENTERPRISE coordinated together to ensure the success of the enterprise as a hardened encrypted communications platform developed "by criminals for criminals."

4. Defendant was a Distributor of ANOM devices for the ANOM ENTERPRISE.

5. Defendant distributed ANOM devices to criminal end-users between at least November 2020 and June 2021.

6. Through communications, including text messages, photographs, and voice memos between members of the ANOM ENTERPRISE which U.S. investigators lawfully obtained, Defendant and others facilitated the importation, exportation, and distribution of wholesale quantities of federally controlled substances,

Def. Initials _____

21-CR-1623-JLS

including cocaine and methamphetamine, both Schedule II Controlled Substances, throughout the world. It was reasonably foreseeable to Defendant that, as part of this conspiracy, ANOM Distributors including Defendant sold ANOM devices knowing and intending they be used to coordinate the importation, exportation, and distribution of at least 50 kilograms of cocaine, and in fact, they did so. For example:

a. On or about January 13, 2021, Defendant wrote to another ANOM co-conspirator that, among other things, an ANOM device with a six-month subscription would cost "750" (Euros), which would involve the other user selling the device for 1100 and paying Defendant 800; and they discussed cocaine distribution and sales, as the other user noted that he would have "5 blocks of colombian coke" for "10k" available, and they could split the profits. Defendant wrote that he would need to "check quality" and if it was good, then he could "sell it to spain marbella I think". In addition, Defendant and the other user exchanged a photo of multiple bricks of cocaine from a different individual who "want[ed] 20 phones" (20 ANOM devices).

b. On or about February 4, 2021, Defendant and another ANOM co-conspirator, JAMES THOMAS FLOOD ("FLOOD"), discussed ANOM sales and the distribution of cocaine. FLOOD stated that there was "some tops [cocaine] in Finland" and "interesting" opportunities in Moscow, Russia as well; Defendant wrote that he worked in Russia "a lot", in

Def. Initials ____

21-CR-1623-JLS

Saint Petersburg and Moscow, and discussed arranging a "sample" and a "very good contact just for us". FLOOD was another ANOM co-conspirator, whose role(s) included serving as a Distributor for the ANOM ENTERPRISE, and who was the user of at least one ANOM Jabber Identification (JID), JID b12485, with the username "Mr Cappuccino".

c.    On or about February 20, 2021, Defendant wrote to another ANOM co-conspirator that he needed 500 grams or one kilogram of cocaine, and stated that he would have "mucho" ketamine available.

d.    On or about March 7, 2021, Defendant and two other ANOM co-conspirators, including FLOOD, discussed cocaine distribution in Finland. Defendant wrote that he had "working routes", asked whether they had "good quality" cocaine, which "[n]eed[ed] to be well washed no repress," confirmed whether the drugs came from Colombia, and stated that he did not want "anything mixed" because others would test the drugs and the quality needed to be high ("needs to be 80+ good commercial and properly washed").

e.    On or about April 13, 2021, Defendant and another ANOM co-conspirator discussed cocaine production and distribution, as Defendant asked whether the other user had "1kg of good coke here" (one kilogram of high-quality cocaine) and stated that a friend of Defendant would "cook it" to determine the quality. Defendant and the

Def. Initials _____
21-CR-1623-JLS

other ANOM user also discussed other cocaine quality and distribution items in this conversation.

    f.   On or about April 21, 2021, Defendant and another ANOM co-conspirator discussed cocaine distribution and sales, including discussion and photos of bricks of cocaine "like soap blocks…360g [grams] per block", and they arranged the delivery of cocaine to Defendant the same day.

    g.   On or about April 26, 2021, Defendant and another ANOM co-conspirator discussed ANOM device and renewal prices as well as cocaine sales, as Defendant asked the other ANOM user, "did u get new coke?", and the other user offered "new coke" and stated that he had "32 blocks". Defendant confirmed his interest in the product and wrote that he thought his contacts would take "50-100".

    h.   On or about May 23, 2021, Defendant and another ANOM co-conspirator discussed cocaine and marijuana distribution, including by exchanging multiple photos of bricks of cocaine.

7.   Through the ANOM ENTERPRISE, Defendant and others sourced hardened encrypted devices and sold devices that had been configured to send and receive encrypted messages. Defendant did not request, track, or record his customers' real names and strove to remain as anonymous as possible to evade law enforcement.

8.   Through the ANOM ENTERPRISE, Defendant and others laundered and conspired to launder monetary instruments. These funds

1    were the proceeds of specified unlawful activity(ies);
2    including, specifically, the importation, exportation, and
3    distribution of federally controlled substances. For example:

4    a.   On or about November 15, 2020, Defendant exchanged
5         messages with another ANOM co-conspirator, SEYYED
6         HOSSEIN HOSSEINI ("HOSSEINI"), about laundering money
7         through a Delaware company Defendant controlled.
8         Defendant stated, "I have that company in Delaware,
9         United States. I could register with that there won't be
10        any VAT problems or whatever questions asked, you know,
11        it's a working company." HOSSEINI was another ANOM co-
12        conspirator, whose role(s) including serving as a
13        Distributor for the ANOM ENTERPRISE, and HOSSEINI was
14        the user of at least one JID, JID f95c50, with the
15        username "WIJZIJN".

16   b.   On or about February 12, 2021, Defendant again
17        communicated with HOSSEINI about laundering money
18        through his Delaware company, stating, "Delaware company
19        0% tax and no bookeeping", and "It works good as long as
20        you dont sell anything to us and have to pay tax there
21        // Yes this is pure moneylaundring 😑".

22   9.   Through the ANOM ENTERPRISE, Defendant and others used
23        cryptocurrency to facilitate the laundering of the
24        ENTERPRISE's members' ill-gotten gains and to protect
25        members' anonymity.

26   //
27   //
28

Def. Initials AD
21-CR-1623-JLS

**Interstate/Foreign Commerce**

10.  The distribution of hardened encrypted devices around the
     world by the ANOM ENTERPRISE affected interstate and foreign
     commerce.

**Association**

11.  Defendant was associated with the ANOM ENTERPRISE. He was a
     Distributor and the user of at least one JID, JID b12027,
     with the username "AnomFi FIEU⊛".

12.  Defendant coordinated directly with other members of the ANOM
     ENTERPRISE, including Administrators, Distributors,
     Influencers, and Agents, to facilitate the distribution and
     further the notoriety of their product among transnational
     criminal organizations.

13.  Defendant obtained payment from the ANOM ENTERPRISE,
     including criminal end-users, for his sale and promotion of
     ANOM devices.

14.  For example:

     a.  On or about March 17, 2021, Defendant wrote to HOSSEINI
         about opportunities to distribute ANOM devices and
         launder money in Russia and European countries, stating,
         "big gateways to Russia are latvia and lithuania….Ill
         [sic] also start pushing for Kiev, Ukraine….Also i will
         talk how we get phones [ANOM devices] to ru
         [Russia]….Golden days of not bribing officials are long
         over".

     b.  On or about March 26, 2021, Defendant wrote to 31 other
         ANOM co-conspirators to promote the ANOM platform and

Def. Initials ⟨signature⟩
21-CR-1623-JLS

its security features, in response to a "smear campaign" from another encrypted communications platform, Ciphr. Defendant wrote, among other things, "Best place to put your encrypted traffic is on a network with sh\*\*loads of traffic. If someone gets warrant for Amazon servers they get well encrypted traffic [being] transported elsewhere…Can you install OS without rooting. Yes you can. Google services. Nope no need for them. 3rd party French or walkie-talkie software. No 3rd party software in use at all…"

c.     Between on or about April 19, 2021 and May 13, 2021, Defendant and EDWIN HARMENDRA KUMAR, aka Edwin Harmendra Valentine ("KUMAR") discussed the ANOM platform; KUMAR's responsibility for ANOM distribution in Australia; the need to avoid detection by law enforcement, including because of law enforcement action and prosecution relating to Sky ECC; and "crypto fraud work". KUMAR was another ANOM co-conspirator, whose role(s) included serving as a Distributor for the ANOM ENTERPRISE, and KUMAR was the user of at least three JIDs: (i) JID 8447e7; (ii) JID 99072a, with the username "Anøm Australiaᴬᵁᵀᴹ"; and (iii) JID fb36e3, with the username "The One".

**Agreement**

15.   Beginning in 2020 and continuing up to and including June 7, 2021, Defendant agreed with HOSSEINI, FLOOD, KUMAR, and others to conduct the ANOM ENTERPRISE's affairs through a

Def. Initials AO

21-CR-1623-JLS

pattern of racketeering activity. Defendant's agreement with his co-conspirators included the understanding that the ANOM ENTERPRISE would be engaged in multiple racketeering activities on a nearly daily basis for the benefit of the ANOM ENTERPRISE, including (i) facilitating the importation, exportation, and distribution of wholesale and retail quantities of cocaine, a Schedule II Controlled Substance; and (ii) laundering the illegal proceeds of the ANOM ENTERPRISE.

16.  Defendant became a member of the conspiracy knowing the illegal objects of the conspiracy and intending to help accomplish them.

## IV

## PENALTIES

The crime to which Defendant is pleading guilty carries the following penalties:

A.  a maximum 20 years in prison,

B.  a maximum $250,000 fine, or twice the gross gain or loss from the offense, whichever is greater;

C.  a mandatory special assessment of $100 per count;

D.  a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E.  forfeiture of all interests the defendant acquired or maintained in violation of 18 U.S.C. § 1962; all interests

11

Def. Initials  XD
21-CR-1623-JLS

in, securities of, and claims against properties and contractual rights of any kind affording a source of influence over, any enterprise which the defendant established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962; and all properties constituting or derived from proceeds obtained directly or indirectly from racketeering activity.

**V**
**DEFENDANT'S WAIVER OF TRIAL RIGHTS AND**
**UNDERSTANDING OF CONSEQUENCES**

This guilty plea waives Defendant's rights at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant;

F. Not testify or have any adverse inferences drawn from the failure to testify;

G. Assert any rights and defenses defendant may have under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil or criminal proceeding; and

H. Assert at trial or on appeal any legal, constitutional, statutory, regulatory, and procedural rights and defenses that he may have under any source of federal law, including among others, challenges to personal jurisdiction,

1           extraterritoriality, statute of limitations, venue, and the

2           form and substance of the Indictment, including any claims of

3           multiplicity or duplicity.

4       Defendant has been advised by counsel and understands that because

5  Defendant is not a citizen of the United States, Defendant's conviction

6  in this case makes it practically inevitable and a virtual certainty

7  that Defendant will be removed or deported from the United States.

8  Defendant may also be denied United States citizenship and admission to

9  the United States in the future.

10

11                                    **VI**

12   **DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE**
   **PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

13      Any information establishing the factual innocence of Defendant

14  known to the undersigned prosecutor in this case has been turned over

15  to Defendant. The Government will continue to provide such information

16  establishing the factual innocence of Defendant.

17      If this case proceeded to trial, the Government would be required

18  to provide impeachment information for its witnesses. In addition, if

19  Defendant raised an affirmative defense, the Government would be

20  required to provide information in its possession that supports such a

21  defense. By pleading guilty Defendant will not be provided this

22  information, if any, and Defendant waives any right to this information.

23  Defendant will not attempt to withdraw the guilty plea or to file a

24  collateral attack based on the existence of this information.

25  //

26  //

27  //

28

                                      13              Def. Initials ___

                                                      21-CR-1623-JLS

## VII

### DEFENDANT'S REPRESENTATION THAT GUILTY
### PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.   Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B.   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.   No one has threatened Defendant or Defendant's family to induce this guilty plea.

D.   Defendant is pleading guilty because Defendant is guilty and for no other reason.

E.   The disposition contemplated by this agreement is part of a "package" disposition with co-defendants SEYYED HOSSEIN HOSSEINI, AURANGZEB AYUB, and SHANE NGAKURU. If any defendant in the package fails to perform or breaches any part of their agreement, no defendant can withdraw their guilty plea, but the Government is relieved from and not bound by any terms in any agreement in the package.

## VIII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
### SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

14

Def. Initials AU

21-CR-1623-JLS

## IX

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## X

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of

Plea Agreement

Def. Initials AO
21-CR-1623-JLS

1  the parties' sentencing recommendations, Defendant will not withdraw

2  the plea.

3                                    **XI**

4                    **PARTIES' SENTENCING RECOMMENDATIONS**

5       A.    SENTENCING GUIDELINE CALCULATIONS

6          Although the Guidelines are only advisory and just one factor the

7  Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence,

8  the parties will jointly recommend the following Base Offense Level,

9  Specific Offense Characteristics, Adjustments, and Departures:

10           1.   Base Offense Level                              34
                  [USSG §§ 2D1.1(c)(3), 2E1.1(a)(2), 1B1.3(a)]

11           2.   Safety Valve                                    -2*
                  [USSG §§ 2D1.1(b)(18), 5C1.2]
12
             3.   Role                                            -**
13                [USSG §§ 3B1.1, 3B1.2]

14           4.   Money Laundering                                +2
                  [USSG §§ 2S1.1(b)(2)(B), 1B1.3(a)]
15
             5.   Acceptance of Responsibility                    -3
16                [USSG § 3E1.1]

17           6.   Zero-point Offender (if applicable)             -2
                  [USSG § 4C1.1]
18
             7.   Combination of Circumstances                    -2/4[1]
19                [USSG § 5K2.0]

20          **\* If Defendant meets the requirements for Safety Valve as provided**

21  **under USSG §§ 2D1.1(b)(18) and 5C1.2 or meets the requirements under**

22  **USSG § 5C1.2(a)(2)-(5) and the criminal history requirements as**

23  _____

24       [1] A two-point departure is based on Defendant's waiver of appeal
    and collateral attack. The Government agrees to recommend a four-point
    departure if Defendant and all remaining Defendants at this time (SEYYED
25  HOSSEIN HOSSEINI, AURANGZEB AYUB, and SHANE NGAKURU) provide the
    Government with signed plea agreements no later than **January 8, 2025**,
26  and enter their guilty pleas at the Court's earliest availability.
    Further, in all events, this plea offer as to Defendant expires and
27  will be revoked by the Government if Defendant does not provide a signed
    plea agreement to the Government on or before **January 8, 2025**.
28

Plea Agreement                                    Def. Initials _____
                                                  21-CR-1623-JLS

1    provided in the First Step Act, 18 U.S.C. § 3553(f), then the Government

2    will recommend a two-level reduction under the Guidelines at sentencing.

3        ** The parties agree that they will not recommend any adjustment

4    for role. The Government will not recommend any upward adjustment based

5    on aggravating role under § 3B1.1, and Defendant may not argue for any

6    reduction based on mitigating role under § 3B1.2.

7        B.    ACCEPTANCE OF RESPONSIBILITY

8        Despite paragraph A above, the Government need not recommend an

9    adjustment for Acceptance of Responsibility if Defendant engages in

10   conduct inconsistent with acceptance of responsibility including, but

11   not limited to, the following:

12            1.    Fails to truthfully admit a complete factual basis as

13                  stated in the plea at the time the plea is entered, or

14                  falsely denies, or makes a statement inconsistent with,

15                  the factual basis set forth in this agreement;

16            2.    Falsely denies prior criminal conduct or convictions;

17            3.    Is untruthful with the Government, the Court or

18                  probation officer; or

19            4.    Breaches this plea agreement in any way.

20

21       C.    FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE
               UNDER 18 U.S.C. § 3553

22       Defendant may request or recommend additional downward

23   adjustments, departures, or variances from the Sentencing Guidelines

24   under 18 U.S.C. § 3553. The Government may oppose any downward

25   adjustments, departures, or variances not set forth in Section XI,

26   paragraph A above.

27   //

28

Plea Agreement                    17              Def. Initials _____
                                                  21-CR-1623-JLS

D.   NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category.

F.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.   PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The United States will recommend a sentence **within** the advisory Guideline range recommended by the Government at sentencing.

If Defendant is eligible and applies to transfer his sentence pursuant to the international prisoner transfer program, the Government agrees to not oppose Defendant's transfer application, provided that Defendant does not otherwise breach the plea agreement. Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of International Affairs ("OIA") of the Criminal Division of the United States Department of Justice and that the position of the Government is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OIA. Defendant further understands that in addition to OIA, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer. Defendant understands that should the Government decide to oppose his application for the reasons stated, or if the Defendant is denied acceptance into the transfer program for any reason notwithstanding the position of the Government, he will not be able to withdraw his plea of guilty.

G.    SPECIAL ASSESSMENT/FINE/FORFEITURE

    1.    Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

    2.    Fine

The parties have no agreement as to what fine, if any, Defendant will be sentenced to pay.

H.    SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two-thirds of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

## XII

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective

1   assistance of counsel. If Defendant appeals, the Government may support

2   on appeal the sentence or restitution order actually imposed.

3                                   **XIII**

4                     **BREACH OF THE PLEA AGREEMENT**

5        Defendant and Defendant's attorney know the terms of this agreement

6   and shall raise, before the sentencing hearing is complete, any claim

7   that the Government has not complied with this agreement. Otherwise,

8   such claims shall be deemed waived (that is, deliberately not raised

9   despite awareness that the claim could be raised), cannot later be made

10  to any court, and if later made to a court, shall constitute a breach

11  of this agreement.

12       Defendant breaches this agreement if Defendant violates or fails

13  to perform any obligation under this agreement. The following are non-

14  exhaustive examples of acts constituting a breach:

15            1.   Failing to plead guilty pursuant to this agreement;

16            2.   Failing to fully accept responsibility as established in

17                 Section XI, paragraph B, above;

18            3.   Failing to appear in court;

19            4.   Attempting to withdraw the plea;

20            5.   Failing to abide by any court order related to this case;

21            6.   Appealing (which occurs if a notice of appeal is filed)

22                 or collaterally attacking the conviction or sentence in

23                 violation of Section XII of this plea agreement; or

24            7.   Engaging in additional criminal conduct from the time of

25                 arrest until the time of sentencing.

26       If Defendant breaches this plea agreement, Defendant will not be

27  able to enforce any provisions, and the Government will be relieved of

28

all its obligations under this plea agreement. For example, the
Government may proceed to sentencing but recommend a different sentence
than what it agreed to recommend above. Or the Government may pursue
any charges including those that were dismissed, promised to be
dismissed, or not filed as a result of this agreement (Defendant agrees
that any statute of limitations relating to such charges is tolled
indefinitely as of the date all parties have signed this agreement;
Defendant also waives any double jeopardy defense to such charges). In
addition, the Government may move to set aside Defendant's guilty plea.
Defendant may not withdraw the guilty plea based on the Government's
pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any
statements made by Defendant, under oath, at the guilty plea hearing
(before either a Magistrate Judge or a District Judge); (ii) the factual
basis statement in Section III.B in this agreement; and (iii) any
evidence derived from such statements, are admissible against Defendant
in any prosecution of, or any action against, Defendant. This includes
the prosecution of the charge(s) that is the subject of this plea
agreement or any charge(s) that the prosecution agreed to dismiss or
not file as part of this agreement, but later pursues because of a
breach by the Defendant. Additionally, Defendant knowingly,
voluntarily, and intelligently waives any argument that the statements
and any evidence derived from the statements should be suppressed,
cannot be used by the Government, or are inadmissible under the United
States Constitution, any statute, Rule 410 of the Federal Rules of
Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and
any other federal rule.

21

Def. Initials AD

21-CR-1623-JLS

## XIV

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Def. Initials _____

21-CR-1623-JLS

## XVI

### DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

TARA K. McGRATH
United States Attorney

1/13/2025
DATED

JOSHUA C. MELLOR
MIKAELA L. WEBER
PETER S. HORN
Assistant U.S. Attorneys

1/6/25
DATED

PATRICK M. GRIFFIN
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

1/8/2025
DATED

ALEXANDER DMITRIENKO
Defendant

Plea Agreement

23

Def. Initials AD

21-CR-1623-JLS